UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KAREN JOHNSON HALL | CIVIL ACTION |
| VERSUS | NUMBER: 16-15485 |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | SECTION: "I"(5) |

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") benefits based upon disability. (Rec. docs. 15, 17).

Karen Johnson Hall, Plaintiff herein, filed the subject applications for Social Security benefits on November 15, 2010, with a protective filing date of November 5, 2010, alleging disability as of November 15, 2010. (Tr. pp. 392-398, 399-407, 452). In a "Disability Report-Adult" form that appears in the administrative record below, the conditions resulting in Plaintiff's inability to work were identified as pain in the left foot, chronic back pain, high blood pressure, permanent nerve damage to the right leg, rheumatoid arthritis, torn meniscus in the left knee, chronic bronchial asthma, chronic sinusitis, chronic anxiety/panic disorder, and eczema/dermatitis. (Tr. pp. 470-479). Plaintiff's applications for Social Security benefits were denied at the initial level of the Commissioner's administrative review process on April 28, 2011. (Tr. pp. 231-234, 235-238). Pursuant to Plaintiff's request, a hearing *de novo* before an Administrative Law Judge ("ALJ") went forward on December 14,

2011 at which Plaintiff, who was represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. pp. 239-241, 257, 106-155). On January 27, 2012, the ALJ issued a written decision in which she concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 177-193). Plaintiff then requested review of the ALJ's decision by the Appeals Council ("AC") which, on November 28, 2012, remanded the matter to the ALJ for clarification of Plaintiff's mental limitations. (Tr. pp. 194-197).

Following the remand, a second hearing was held by the ALJ with Plaintiff and a VE providing testimony. (Tr. pp. 73-105). On June 21, 2013, the ALJ issued a second written decision in which she again concluded that Plaintiff was not disabled. (Tr. pp. 198-222). Acting on Plaintiff's request for review, on November 5, 2014, the AC remanded the matter to the ALJ a second time to reconcile Plaintiff's residual functional capacity with the skill level of her past relevant work. (Tr. pp. 223-226). On July 1, 2015, yet a third administrative hearing was held, this time before a different ALJ. (Tr. pp. 39-72). On August 5, 2015, that ALJ issued a written decision in which she, too, concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 16-37). Plaintiff once again requested review of the ALJ's decision by the AC. (Tr. pp. 14-15). After granting Plaintiff an extension of time within which to submit additional information (tr. pp. 7-13), on August 16, 2016, the AC denied Plaintiff's request for review of the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 1-6). It is from that unfavorable decision that the Plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

In her cross-motion for summary judgment, Plaintiff frames the issues for judicial review as follows:

> 1) The Step 2 severity determination is not supported by substantial evidence;

2

2) The residual functional capacity finding is not supported by substantial evidence; and

3) The Step 4 determination is not supported by substantial evidence.

(Rec. doc. 15-2, pp. 4, 6, 9).

Relevant to the issues to be decided by the Court are the following findings that were made by the ALJ:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.

2. The claimant has not engaged in substantial gainful activity since November 15, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease, status-post ORIF surgery, hypertension, headaches, asthma, anxiety and other arthralgias (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she must alternate positions every 30 minutes while remaining on task; she can perform work with only routine workplace changes. She has postural limitations whereby she can occasionally climb ramps/stairs, and stoop but should avoid kneeling. In addition, she has environmental limitations whereby she should avoid work with dangerous/hazardous machinery; and concentrated exposure to environmental irritants/loud noises.

6. The claimant is capable of performing [her] past relevant work as a receptionist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 15, 2005, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. pp. 22, 23, 25, 29, 30).

Judicial review of the Commissioner's decision to deny DIB or SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision and (2) whether the decision comports with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues *de novo*, nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB or SSI benefits bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). Once the claimant carries her initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. *Harrell*, 862 F.2d at 475. In making this determination, the Commissioner uses the five-step sequential analysis set forth in 20 C.F.R. §§404.1520 and 416.920, as follows:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work that she has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes her from performing her past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that she is disabled and must ultimately demonstrate that she is unable to perform the work that she has done in the past. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294

n. 5 (1987). In making this determination, the ALJ is required to assess the demands of the prior work and to compare those demands to the claimant's present capabilities. *Villa*, 895 F.2d at 1022; *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988); *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980). The assessment of the demands of a claimant's prior work "… may rest on descriptions of past work as actually performed or as generally performed in the national economy." *Villa*, 895 F.2d at 1022 (citing *Jones v. Bowen*, 829 F.2d 524, 527 n. 2 (5th Cir. 1987)). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

As noted earlier, Plaintiff challenges the Commissioner's decision to deny her Social Security benefits on three grounds. In the first of those, Plaintiff argues that, at step two of the §§404.1520/416.920 sequential analysis, the ALJ erroneously failed to find that her obesity was a "severe" impairment. More specifically, Plaintiff argues that the ALJ's step-two analysis contained no discussion of her obesity at all; that the first ALJ who considered her applications had found obesity to be a severe impairment; that various examining and treating physicians had characterized her as obese and/or counseled her on weight loss and that the ALJ's residual functional capacity assessment contained no obesity-related limitations. (Rec. doc. 15-2, pp. 5-7).

In addressing this first challenge to the Commissioner's decision, the Court initially notes that Plaintiff never identified obesity itself as a disabling condition in her application for benefits or related paperwork, an omission that tends to undermine that alleged basis of disability. *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989). Be that as it may, a review of the ALJ's written decision of August 5, 2015 reveals that she repeatedly and properly

recognized her obligation to consider the evidence related to all of Plaintiff's various impairments in determining whether they, singly or in combination, were severe; whether they satisfied Listing-level severity; and how they affected Plaintiff's residual functional capacity ("RFC") to work. (Tr. pp. 20-29). Indeed, in making an assessment of Plaintiff's RFC, the ALJ specifically recalled her duty to "… consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p)" (Tr. p. 21). Obesity, while no longer a stand-alone impairment set forth in the Listing of Impairments, can reduce an individual's occupational base for work activities in combination with other conditions. *Weary v. Astrue*, 288 Fed.Appx. 961, 966 n. 2 (5th Cir. 2008); *Beck v. Barnhart*, 205 Fed.Appx. 207, 211-12 (5th Cir. 2006). Descriptive terms for levels of obesity, such as "severe," "morbid," or "extreme," do not establish whether obesity is or is not a "severe" impairment for disability purposes. Social Security Ruling ("SSR") 02-1p, 2000 WL 628049 at *4. That Ruling further directs the Commissioner to "… do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." *Id.*

Ruling 02-1p also instructs that, because there is no longer a specific listing for obesity, the Commissioner will find that a claimant with obesity meets the requirements of a listing if she has another impairment that, by itself, meets the requirements of a listing which "… is especially true of musculoskeletal, respiratory, and cardiovascular impairments." *Id.* at *4-5. Plaintiff makes no argument here that her condition otherwise satisfied the criteria of another impairment set forth in the Listing of Impairments and by specifically considering Plaintiff's asthma and hypertension, the ALJ thus adequately complied with the mandate of SSR 02-1p. Having properly found that Plaintiff's conditions

did not satisfy the criteria of any of those set forth in the Listing of Impairments, the Regulations directed the ALJ to make an assessment of Plaintiff's RFC to work. 20 C.F.R. §§404.1520(e), 404.1545, 416.920(e), 416.945. In doing so, the ALJ noted that Plaintiff had been "… counseled on weight loss …" (tr. p. 27) and she further stated that:

> [t]he claimant's obesity was also considered, 63 inches high and weight of 223 lbs., and while the record does not show any examination findings, which would support functional limitations, the undersigned finds that the residual functional capacity above sufficiently included any reasonably expected limitations related to obesity.

(Tr. p. 29).

The Court recalls that in making her RFC assessment, the ALJ added the option of alternating positions every 30 minutes, only occasional climbing of ramps/stairs and stooping, and avoidance of kneeling, arguably in recognition of Plaintiff's obesity. (Tr. p. 25). On the other hand, the consultative evaluator, Dr. Miljana Mandich, who remarked that Plaintiff was "moderately obese," found that she required only slight self support getting on and off the chair and exam table but that she otherwise ambulated without difficulty and without a limp, that she could walk on her heels and toes, and that she could squat halfway down and rise without support. (Tr. pp. 590-597). Just as in *Beck, supra*, despite Plaintiff's failure to specifically identify obesity as a disabling condition in her applications for Social Security benefits and related paperwork, the ALJ independently recognized that obesity should be considered in conjunction with Plaintiff's other impairments, including when assessing Plaintiff's RFC. *Beck*, 205 Fed.Appx. at 211-12; *see also* 20 C.F.R., Pt. 404, Subpt. P., App. 1, Section 1.00(Q). And, as the written decision that was issued by the second ALJ was not inconsistent with the AC's second order of remand, the second ALJ was not bound by the findings of the first. 20 C.F.R. §§404.977(b), 416.1477(b).

A "severe impairment" is defined as any impairment or combination thereof that significantly limits one's physical or mental ability to do basic work activities. 20 C.F.R. §§404.1520(c), 416.920(c); *Shipley v. Sec. of Health and Human Services*, 812 F.2d 934, 935 (5th Cir. 1987). The ALJ, in her written decision, accurately recited this standard. (Tr. pp. 20-21). In *Stone v. Heckler*, 752 F.2d 1099, 1102-04 (5th Cir. 1985), the Fifth Circuit disapproved of the summary denial of Social Security benefits applications at the second step of the §§404.1520/416.920 sequential evaluation such that any claim that is based upon an impairment that is more than a "slight abnormality" will proceed through step two of the five-step analysis. *Anthony*, 954 F.2d at 293-94; *Stone*, 752 F.2d at 1102-04. Because Plaintiff's applications for Social Security benefits proceeded past step two of the §§404.1520/416.920 analysis and were not summarily denied at that step based on the fact that she did not suffer from a severe impairment, Plaintiff's first challenge provides no basis for disturbing the Commissioner's decision. *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Wagner v. Astrue*, No. 08-CV-0519, 2010 WL 546739 at *7 (E.D. La. Feb. 12, 2010).

In her second challenge to the Commissioner's decision, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence for various reasons that will be discussed more fully below. (Rec. doc. 15-2, pp. 7-10). In addressing this challenge, the Court recalls that at step three of the §§404.1520/416.920 analysis, the ALJ found that Plaintiff's conditions did not satisfy the criteria of any impairments set forth in the Listing of Impairments. (Tr. pp. 23-25). Plaintiff does not challenge that finding here. With that finding, the Regulations mandated that the ALJ make an assessment of Plaintiff's RFC, a term of art that embraces a claimant's ability to work despite her physical and/or mental

impairments. 20 C.F.R. §§404.1520(e), 404.1545, 416.920(e), 416.945; *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988). Just like the ultimate decision of whether or not a claimant is disabled, the responsibility for determining a claimant's RFC is reserved to the Commissioner and at the hearing level that assessment is entrusted to the ALJ. 20 C.F.R. §§404.1527(e)(2), 404.1546(c), 416.927(e)(2), 416.946(c).

While an ALJ is not bound by the findings made by state-agency medical consultants, because such consultants are highly qualified physicians with expertise in Social Security disability evaluations, the ALJ must consider their findings as opinion evidence, except for the ultimate determination about whether or not a claimant is disabled. 20 C.F.R. §§404.1527(e)(2)(i), 416.927(e)(2)(i). An ALJ is not statutorily or jurisprudentially obligated to explicitly list all of the evidence she takes into account in making her findings, but her decision must contain an explanation of the weight given to the opinions of state-agency medical consultants. *Hammond v. Barnhart*, 124 Fed.Appx. 847, 851 (5th Cir. 2005). "The ALJ's failure to mention a particular piece of evidence does not necessarily mean that [s]he failed to consider it ..." *Id.* Procedural perfection in administrative proceedings is not required and such improprieties will constitute a basis for remand only if they cast doubt on the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). The law is also clear that the ALJ has the sole responsibility for determining a claimant's disability status and is free to reject the opinion of <u>any</u> physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)(quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994), *overruled in part on other grounds by Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080 (2000)).

In finding that none of Plaintiff's conditions satisfied the criteria of any of those set forth in the Listing of Impairments, the ALJ focused largely on the evidence related to Plaintiff's non-exertional mental impairments, measuring them against the criteria of Listing 12.06 respecting anxiety-related disorders. (Tr. p. 23). In doing so, the ALJ discussed Plaintiff's treatment history with Drs. Sack and Alvarez, her administrative hearing testimony, and the capabilities that she reported in the Function Report that was completed on November 22, 2010. (Tr. pp. 23-25). After setting forth her RFC assessment, the ALJ launched into a detailed discussion of the evidence upon which that finding was based, including Plaintiff's treatment at the hands of Drs. Dantin, Wyche, Beck, and Egan and that provided at the Medical Center of Louisiana at New Orleans. (Tr. pp. 25-28). Turning to Dr. Miljana Mandich, the evaluator chosen by the Commissioner, the ALJ accurately summarized the results of the doctor's evaluation, as follows:

> Dr. Miljana Mandich consultatively examined the claimant on March 1, 2011 at the request of Disability Determination Services. Upon presentation, the claimant endorsed high blood pressure, asthma, bronchitis, low back pain, and left knee pain. On physical exam, Dr. Mandich observed and noted that she could walk without use of an assistive device and without a limp. She could squat halfway down and rise without support. She demonstrated a full range of motion of all joints, including both knees. Cardiovascular and neurological examinations were within normal limits. Clinical impressions following examination included anxiety and depression, back pains with no "positive clinical findings," asthma and bronchitis (by history), hypertension, status-post arthroscopic left knee surgery in November 2010 and carpal tunnel release on the right in 1996. Dr. Mandich following her examination made no treatment recommendations and assigned no functional limitations. (*See Exhibit* 5F).

(Tr. p. 28).

After summarizing the results of Plaintiff's ORIF surgery and her treatment for degenerative disc disease, hypertension, and mental impairments, the ALJ concluded her RFC assessment analysis with the following:

> As for the opinion evidence, great weight has been given to the medical records and opinions issued by consultative examiner Mandich as [those] opinions comport with the partially credibly testimony of the claimant and the objective evidence of record. Based upon the evidence and the record as a whole, I find that none of the treating or examining medical providers has concluded that the claimant, given his (sic) combination of severe impairments, is disabled from work activity on a regular and continuing basis. I also find that the claimant has failed to present persuasive or credible evidence that would contradict the physical or mental capacity evaluations of the State agency consultants.

(Tr. p. 29)(emphasis added).

Plaintiff first faults the ALJ for according great weight to the opinions of Dr. Mandich, even though the doctor provided no function-by-function assessment of her physical limitations. Plaintiff cites no authority mandating such an assessment and the narrative discussion provided by the ALJ appears to sufficiently comport with the SSA's requirements. SSR 96-8p, 1996 WL 374184 at *6-7. Plaintiff also appears to take issue with the fact that although Dr. Mandich diagnosed her as suffering from various conditions but assigned no functional limitations as a result thereof, the ALJ assessed her as being capable of only a modified range of sedentary work. The mere existence or diagnosis of a condition and its attendant symptomology does not equate with a finding of disability under the Social Security Act. *Randall v. Astrue*, 570 F.3d 651, 658-59 (5th Cir. 2009). The Court is also aware of other cases in which Dr. Mandich had no hesitation in finding that a claimant's impairments resulted in functional limitations, *Hussey v. Astrue*, No. 08-CV-1253, 2009 WL 166666 at *11 (E.D. La. Jan. 20, 2007), in recommending that a claimant seek treatment for

certain conditions, *Taylor v. Commissioner of Social Security*, No. 14-CV-2563, 2015 WL 10401114 at *5 (W.D. La. Dec. 30, 2015), *adopted*, 2016 WL 902579 (W.D. La. Mar. 3, 2016), or even in overstating a claimant's limitations beyond what was ultimately found by the ALJ. *Hernandez v. Astrue*, No. 08-CV-3420, 2009 WL 3241567 at *3 (E.D. La. Oct. 1, 2009). That Dr. Mandich, like Plaintiff's treating physicians, did not place any limitations upon Plaintiff's activities as a result of her evaluation is a proper consideration in a Social Security proceeding, *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995), and, in any event, the Court is hard-pressed to see how Plaintiff was prejudiced by the ALJ's adoption of an RFC assessment that was even more restrictive than that of the consultative evaluator.

Next, Plaintiff takes exception with the ALJ's treatment of the opinions of the state-agency medical consultants in connection with the consideration of Plaintiff's applications for benefits at the initial level of the Commissioner's administrative review process. As was quoted above, in passing upon the opinion evidence that was before her, the ALJ found that Plaintiff had "… failed to present persuasive or credible evidence that would contradict the physical or mental capacity evaluations of the State agency consultants." (Tr. p. 29). Although the ALJ must consider the opinions of state-agency medical consultants, she is not bound by any findings that the consultants make. 20 C.F.R. §§404.1527(e)(2)(i), 416.927(e)(2)(i); *Alejandro v. Barnhart*, 291 F.Supp. 497, 515 (S.D. Tex. 2003). In the present case, the state-agency medical consultants reviewed Plaintiff's file as it was then extant on April 27, 2011, including a copy of Dr. Mandich's consultative evaluation report of March 1, 2011, and concluded that she could perform light level work activity with certain postural limitations and respiration precautions. (Tr. pp. 156-165, 166-174). To the extent that the ALJ failed to sufficiently articulate the weight that she gave to the opinions of the state agency

medical consultants, any error is harmless as the ALJ ultimately found that Plaintiff was capable of performing only a limited range of sedentary work. *Hammond v. Barnhart*, 124 Fed.Appx. 847, 850-51 (5th Cir. 2005).

Plaintiff points to further inconsistencies between the findings of the state agency medical consultants and the RFC assessment that was ultimately arrived at by the ALJ as demonstrating that the ALJ's decision was not supported by substantial evidence: whereas the consultants had found that Plaintiff could perform light-level work with no climbing of ladders/ropes/scaffolds and with the avoidance of even moderate exposure to airborne irritants, the ALJ imposed no limitations regarding the climbing of ladders/ropes/scaffolds and indicated that Plaintiff should avoid only concentrated exposure to environmental irritants. The Court recalls that the ALJ found that Plaintiff could perform a limited range of sedentary work which the Regulations define as follows:

> <u>Sedentary</u> <u>work</u>. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§404.1567(a), 416.967(a)

At the most recent administrative hearing that was held in Plaintiff's case the VE testified that, through her past relevant work, including that as a receptionist, Plaintiff had acquired readily transferrable skills such as "… using her hands bimanually to operate machines, answer telephones, fill out forms … to keep records, reports, logs, things of that nature …" and to "… use computers or different types of equipment such as a 10-key adding machine …" (Tr. p. 67). Despite the VE being tendered to Plaintiff's counsel to add the

postural and environmental limitations that she identified, counsel declined to do so. She should not now be heard to complain of the adequacy of the ALJ's hypothetical question to the VE, which later became the ALJ's RFC assessment, when it was not deemed sufficient to merit adversarial development in the administrative hearing that was held below. *Masterson v. Barnhart*, 309 F.3d 267, 273-74 (5th Cir. 2002); C*arey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Plaintiff does not presently argue that her past work as a receptionist involved the climbing of ladders/ropes/scaffolds and required respiration precautions that were more restrictive than what the ALJ arrived at in her RFC assessment. Nor could she credibly do so, as such postural activities and environmental exposures are generally not involved in the performance of sedentary work. SSR 96-9p, 1996 WL 374185 at *7-9.

Plaintiff additionally complains that the non-exertional limitations that were noted by the ALJ in her RFC assessment were more extensive than what had been found by the state-agency psychological consultant. Once again, how Plaintiff is prejudiced by the ALJ's adoption of restrictions greater than those found by the consultant is not at all apparent. The Fifth Circuit has endorsed the definition of "moderate" to mean that some mental limitations exist but that the individual can still perform tasks satisfactorily. *Cantrell v. McMahon*, 227 Fed.Appx. 321, 322 (5th Cir. 2007). Measured against the activities that Plaintiff indicated that she was capable of in the Function Report that she completed (tr. pp. 489-496), the ALJ's RFC assessment limiting Plaintiff to sedentary work with only routine workplace changes properly accounts for any mental limitations.[1]

---

[1] The ALJ may properly consider the activities that Plaintiff indicated that she was capable of in the Function Report. *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th 1989).

Under the rubric of her second challenge to the Commissioner's decision, Plaintiff also argues that "[t]he ALJ failed to recontact a treating physician or [to] order a consultative mental examination in order to fully assess Plaintiff's mental limitations." (Rec. doc. 15-2, p. 9). As the wording of the applicable Regulations cited by Plaintiff makes clear, the decisions whether to recontact a treating physician or to order a consultative evaluation at government expense are entirely discretionary and come into play only if the Commissioner believes that the evidence before her is insufficient to allow her to make a decision. 20 C.F.R. §§404.1520b(c), 416.920b(c); *see also Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). Plaintiff does not identify the doctor whom the ALJ should have recontacted and absent any suggestion of what a consultative examination would have uncovered, Plaintiff's speculative assertion that the ALJ failed to adequately develop the record fails to establish that level of prejudice necessary to obtain a reversal of the Commissioner's decision. *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000). And as was touched upon earlier, not only can the lack of treating physicians' disability pronouncements or limitations on a claimant's activities be considered in the Social Security context, *Leggett*, 67 F.3d at 565, the absence of more significant findings can also be considered by an ALJ in adjudicating a claimant's disability status. *Clayborne v. Astrue*, 260 Fed.Appx. 735, 737 (5th Cir. 2008); *Adams*, 833 F.2d at 512.

In her third and final challenge to the Commissioner's decision, Plaintiff argues that the ALJ's step-four determination is not supported by substantial evidence. (Rec. doc. 15-2, pp. 10-11).

Because Plaintiff's applications for Social Security benefits were denied at the fourth step of the §§404.1520/416.920 sequential analysis, the burden of proof remained with her at all times to establish that she was unable to engage in the work that she has done in the

past as that work was actually performed or as it is generally performed in the national economy. *Bowen*, 482 U.S. at 146 n. 5, 107 S.Ct. at 2294 n. 5. Under certain circumstances, the determination of whether or not a claimant can perform her past work can be made by the ALJ without vocational testimony. *Laurent v. Astrue*, No. 07-CV-3831, 2009 WL 959463 at *11 (E.D. La. Mar. 26, 2009), *aff'd*, 366 Fed.Appx. 559 (5th Cir. 2010)(citing *Williams v. Califano*, 590 F.2d 1332, 1334 (5th Cir. 1979)). In the present case, however, the ALJ relied upon the testimony of a VE to find that Plaintiff was capable of performing her past relevant work. "The value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1985). "A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Id.*

A hypothetical question to a VE must reasonably incorporate all of the disabilities of a claimant that are recognized by the ALJ. *Bowling v. Shalala*, 36 F.3D 431, 436 (5th Cir. 1994). Plaintiff appears to argue here that the cumulation of arguments that she advanced under the guise of her first two challenges led to an incomplete hypothetical question, the answer to which resulted in a step-four determination that was not supported by substantial evidence. For the reasons discussed earlier, the Court believes that both the ALJ's severity determination and her RFC assessment were supported by substantial evidence and thus did not impugn her findings at step four. Faced with the conflicting evidence before her, which included at one end of the spectrum Plaintiff's hearing testimony of significantly restricted activities, and at the other end of the spectrum the objective findings of Plaintiff's own

treating physicians along with the largely unremarkable findings of Dr. Mandich, the ALJ arrived at an RFC for a limited range of sedentary work. That assessment was even more restrictive than that rendered by the state-agency medical consultants who are presumably of a conservative nature. In light of Plaintiff's hearing testimony of experiencing pain when sitting or standing for uninterrupted periods of time, the ALJ reasonably added in her RFC assessment the common workplace accommodation that an employee be allowed to alternate between sitting and standing. *See*, *e.g.*, *Jones v. Apfel*, 174 F.3d 692, 694 (5th Cir. 1999). While the Court is not unsympathetic to Plaintiff's condition, its role is extremely circumscribed here and is limited to determining whether the Commissioner's decision is supported by substantial evidence, a highly deferential standard of review. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980). The VE's answer to the hypothetical question as framed by the ALJ constitutes substantial evidence that Plaintiff was not disabled.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that Plaintiff's suit be dismissed.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[2/]

New Orleans, Louisiana, this  18th  day of             May            , 2017.

                                                            _____
                                                            MICHAEL B. NORTH
                                                            UNITED STATES MAGISTRATE JUDGE

---

[2/] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.